## AUDITORIUM CONDITIONING CORPORATION v. WARNER BROS. PICTURES, Inc., et al.

District Court, S. D. New York.

June 4, 1935.

R. B. Knowles, of New York City (H. A. Toulmin, H. A. Toulmin, Jr., and Herman Seid, all of Washington, D. C., of counsel), for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City (George E. Middleton, of New York City, of counsel), for defendants.

COXE, District Judge.

This is an infringement suit involving the Lewis reissue patent, No. 16,611, dated May 3, 1927, and the Fleisher patent, No. 1,670,656, dated May 22, 1928, both relating to air conditioning in theaters, auditoriums, or other large inclosures, where people congregate in considerable numbers. The two patents are owned by the plaintiff; and the defendants are charged with operating an infringing system in the Hollywood Theater in New York City.

The claims in issue are Nos. 1, 3, 13, and 14 of the Lewis patent, and Nos. 1, 13, 14, 17, and 20 of the Fleisher patent; and typical claims of both patents were held valid and infringed by Judge Hazel in Auditorium Ventilating Corp. v. Greater Rochester Properties (D. C.) 59 F.(2d) 450, and by Judge Campbell in Auditorium Conditioning Corp. v. St. George (D. C.) 4 F. Supp. 95. The case before Judge Campbell was, however, tried on the issue of validity solely on the record made before Judge Hazel; and Judge Campbell found invention with respect to both patents on substantially the same grounds as given by Judge Hazel in the earlier litiga-

tion. Neither decision was reviewed by the Circuit Court of Appeals.

In the present case, the defendants have made an entirely new record, with additional prior patents, publications, and uses; and the whole question of the validity of both patents has been relitigated and presented de novo. There is no suggestion at this time of estoppel by reason of the decrees in the two previous cases.

The defenses are invalidity and noninfringement.

The controlling factors in air conditioning are the temperature and the relative humidity. These two are intimately related, and any change in temperature affects also the relative humidity. The reason is obvious, for it is elementary that the amount of moisture which a given quantity of air can absorb varies with the temperature. Therefore, if air is heated, its capacity to hold moisture is increased, and its relative humidity diminished; and, conversely, if it is cooled, its capacity to hold moisture is decreased, and its relative humidity raised. When air is cooled to the dew point, saturation starts, and further cooling results in precipitation.

In hot weather, the air is unpleasant if both the temperature and the relative humidity are high. The problem is, therefore, to reduce the temperature and dehumidify. This is ordinarily accomplished by passing the hot air through a conditioner, where the temperature is reduced below the dew point, and the desired amount of moisture eliminated by precipitation. The air coming from the conditioner is then cold and dehumidified, but it cannot be used without causing cold drafts and serious discomfort. To remedy this defect, it is necessary again to raise the temperature of the air by reheating, or otherwise, in order that its capacity to absorb moisture may be increased, and its relative humidity correspondingly reduced. When this is done, the air is in a condition to be used without discomfort.

These principles of air conditioning have been thoroughly understood for years; and they are well and clearly expressed in a booklet recently published by the plaintiff, entitled "The Key to Economy in Comfort Cooling," reading as follows: "To bring the air to a comfortable temperature and relative humidity, we must first squeeze out the surplus moisture. This we condense by cooling the air down to about 56 degrees—a temperature much lower than required in the building. We then have to reheat the cooled air to a normal temperature and this will give the relatively dry air that makes one feel comfortable even at temperatures as high as 78 degrees and 80 degrees."

This booklet also states that there were two recognized methods known to the prior art for reheating the cooled air to bring it to a normal temperature: "One, the inexpensive and unsatisfactory way, is to blow cold air directly into the room and depend upon the warm air in the room to do the reheating," which was unsatisfactory because it was "likely to create drafts"; and "the other method, expensive but satisfactory, is to use steam for reheating." Of this latter, or steam-heating method, the booklet makes the following comment: "By this separate reheating means the 56 degrees dehumidified air can be accurately controlled at any desired temperature and a good supply of comfortable air furnished to rooms without cold drafts. But the cost of such a system is prohibitive. Besides requiring an enormous refrigerating machine to cool the full volume of air down to the dewpoint, it needs an expensive steam plant for reheating. This is an obvious absurdity in a summer cooling plant."

With this background of the patents, it is not difficult to see what Lewis and Fleisher understood they had accomplished. Lewis says in his patent that his main object was to save the prohibitive expense of reheating, and he did this by mixing the cold air leaving the conditioner with the recirculated or warmer air withdrawn from the room, which by-passed the conditioner. In that way, he not only saved the cost of reheating, but also cut down the expense of refrigeration. Fleisher went a step further, and not only by-passed some of the air from the room around the conditioner, as in Lewis, but also mixed withdrawn or recirculated air with fresh air before passing it through the conditioner. This is described in the Fleisher patent as follows: "Great economies may be thus effected by utilizing, insofar as possible, air coming from the room itself rather than outside air. This withdrawn or recirculated air is preferably used for two purposes. First, because of its close approximation to the standard desired, it may be used in part, at

least, as the air to be conditioned intensively to restore the room conditions. Second, it may be used to increase the volume of circulating air and to dilute the intensively conditioned air so that it shall not differ too much either in temperature or humidity from the standard to be maintained."

The Lewis method claim 1 is fairly typical, and reads as follows: "1. The method of ventilating an enclosure in which people assemble, which includes withdrawing air from said enclosure, conditioning fresh air to provide air having a dew point lower than the dew point of the withdrawn air, mixing said conditioned fresh air with air withdrawn from the enclosure and delivering the mixed air to the enclosure, and varying the proportions of said fresh air in the mixture in accordance with changes in the number of people in the enclosure."

Claim 1 of the Fleisher patent reads as follows: "1. The process of ventilating and conditioning a room, which includes withdrawing air from the room, mixing fresh air with withdrawn air, conditioning said mixture, adding withdrawn air having a condition different from the conditioned air to said mixture after conditioning and adjusting responsive to air conditions in the room the proportions of conditioned air and withdrawn air to vary the humidity in the room."

The apparatus claims of both patents are similar to the analogous method claims, and require no particular comment.

I think the patents must stand or fall on the principle of using with a by-pass the recirculated or withdrawn air from the room to temper the cold, saturated air coming from the conditioner. Did this constitute invention? Judge Hazel held that it did, because he thought it was "a new and novel conception"; and Judge Campbell reached the same conclusion after finding that the by-passing was "the gist of both of the patents in suit."

The practice of mixing cold, conditioned air with by-passed untreated outside air, in order to raise the temperature and reduce the relative humidity, is fully disclosed in the Rietschel Book (1894), and the Senate Report (1895); and the Hoffman British patent, No. 16,598 (1898), and the Klein patent, No. 1,296,968 (1919), disclose the use of warm air from the room to temper the cold air leaving the conditioner. Klein also shows the mixing of outside air with interior air before entering the conditioner. The Hoffman patent contains the following statement:

"As is well known if cold air is introduced into the interior of a heated room unpleasant if not dangerous drafts are created.

"To obviate this is an essential feature of my invention and I arrange to mix the incoming air with the air in the building before delivering the same into the building, and thus equalize to some extent the temperatures of the air without and within the room."

Klein summarizes his invention as follows: "My invention embodies a method of ventilating, or ventilating and heating or cooling interiors, applicable to the blast system in such manner as to retain the advantages of that system and to remove the prior objections to cost or else to strong air currents and uncomfortable hot or cold blasts in the zone of occupancy in both large and small interiors, and it permits the use of conditioning, circulating and distributing systems which are considerably reduced in size and less expensive in operation. I attain these objects broadly by tempering just prior to entry into the interior, considerably heated or cooled fresh air with other air from the interior, and discharging the mixed air into the interior."

The Klein patent also states: "In the wall and floor conduit system of Fig. 1, fresh air is drawn by a fan from the outside of the interior, or from the inside, or from both the outside and inside, in amounts regulated by the valves or dampers 1, and is forced through a water spray or other cleansing or humidifying apparatus and into contact with the heating or cooling apparatus, all of which apparatus, including the fan, is indicated by the reference 2."

It will thus be seen that there was nothing new in the use of a by-pass; or in tempering cold, saturated air with recirculated or warmer air withdrawn from the room; or in mixing outside air with interior air before passing through the conditioner; and any claim of Lewis and Fleisher to invention for those specific ideas must, therefore, necessarily fail.

24

The plaintiff insists, however, that the particular organization of the patented systems constituted invention, and that Lewis and Fleisher were the first to develop highly organized apparatus capable at all times of responding to rapidly changing conditions of temperature and humidity both inside and outside the room being conditioned. The difficulty with this contention is that all of the control mechanism of both patents, including the dampers, hygrostats, thermostats, and other apparatus, was old, and it was within the skill of the calling to position and adjust these various devices to fit any desired system. It was conceded also by the plaintiff's expert that automatic controls were mere conveniences and not necessary in the operation of either system. Moreover, the plaintiff itself, in its own booklet, stated that under the old reheating method of the prior art, the dehumidified air leaving the conditioner could be "accurately controlled at any desired temperature and a good supply of comfortable air furnished to rooms without cold drafts."

The Klein patent, No. 1,296,968 (1919), was concededly the best patent reference cited by the defendants in anticipation of both patents in suit; and this patent, in addition to showing the use of a by-pass, and the mixing of inside air before and after it left the conditioner, shows the use of dampers similar to those employed by Lewis and Fleisher. The Klein patent was, however, criticised by the plaintiff as an anticipation principally because of the use of an injector instead of a fan for the purpose of inducing an air current in the wall circuit. But Klein expressly states that "any suitable form of injector may be used for my purpose, or the air from the interior may, if desired, be forced to the place of mixture with the fresh air by means of fans"; and the substitution of a fan in place of Klein's preferred injector produces the identical systems of Lewis and Fleisher. I can see no escape from the conclusion, therefore, that Klein is an anticipation of both patents in suit.

There may be a decree holding that claims Nos. 1, 3, 13, and 14 of the Lewis reissue patent, No. 16,611, and claims Nos. 1, 13, 14, 17, and 20 of the Fleisher patent, No. 1,670,656, are invalid for lack of invention; and dismissing the complaint, with costs.